# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

RYAN MARTIN WONDERLY, )
 )
 Petitioner, )
 )
vs. ) Case No. CIV-09-1138-D
 )
ERIC FRANKLIN, Warden, )
 )
 Respondent. )

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing through counsel, brings this action pursuant to 28 U.S.C. § 2254 seeking a writ of habeas corpus. United States District Judge Timothy D. DeGiusti referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). A response has been filed, and thus, the matter is at issue. For the following reasons, it is recommended that the petition be denied.

By this action, Petitioner challenges his felony convictions, pursuant to his Alford pleas[1] to four counts of rape in the first degree by instrumentation and ten counts of indecent or lewd acts with a child under sixteen. Petition, 2, 4; Case No. CF-2004-595, District Court of Oklahoma County, Docket (available at Original Record, 370-402). Petitioner was sentenced to thirty-five years imprisonment on each of the rape charges, to run concurrently with one another, and twenty years imprisonment on each of the indecent or lewd acts charges, all of which were suspended and ordered to run consecutively to the sentences on

---

[1]An Alford or nolo contendere plea is "a plea by which a defendant does not expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court for purposes of the case to treat him as if he were guilty." See North Carolina v. Alford, 400 U.S. 25, 35 (1970).

the rape charges but concurrently with one another. Petition, 5; <u>Wonderly v. State</u>, No. PC-2009-206, at 1-2 (Okla. Crim. App. Oct. 8, 2009) (attached to Response as Exhibit 6). Petitioner subsequently moved to withdraw his pleas which the trial court denied, and the Oklahoma Court of Criminal Appeals denied his petition for certiorari. <u>State v. Wonderly</u>, No. CF-2004-595 (Okla. County District Court, Aug. 31, 2005) (Order Denying Application to Withdraw Pleas) (available at Original Record, 367); No. C-2005-834 (Okla. Crim. App. June 8, 2007) (attached to Response as Exhibit 2).[2] Petitioner then applied to the trial court for post-conviction relief which was denied. Petition, 5. Petitioner appealed the denial to the Oklahoma Court of Criminal Appeals which affirmed the trial court's decision. Petition, 5; <u>Wonderly v. State</u>, No. PC-2009-206 (Okla. Crim. App. Oct. 8, 2009) (attached to Response as Exhibit 6).

Petitioner argues that his "overarching constitutional claim" is that the trial judge "unconstitutionally coerced him into entering his pleas" in violation of his due process rights. Petition, 14. He also claims that his trial counsel rendered ineffective assistance in failing to seek the trial judge's recusal and in failing to argue in Petitioner's application to withdraw his pleas that counsel had misadvised him regarding the applicability of the 85% rule to his case. Petition, 16-20, 28-29. Petitioner further alleges ineffective assistance of appellate counsel for failing "to develop and present the full evidence showing the coercive

---

[2]Under Oklahoma law, an appeal of a conviction based upon a plea of guilty or nolo contendere must commence with the filing of a motion to withdraw the plea within ten days of judgment, the denial of which may be appealed to the Oklahoma Court of Criminal Appeals by a writ of certiorari. Okla. Stat. tit. 22 §1051; Okla. R. Crim. App. 4.2.

statements" of the trial judge and for failing "to raise the issue that [counsel's] bad advice regarding the applicability of the 85% requirement rendered the pleas involuntary." Petition, 29-30. Finally, Petitioner asserts that he is innocent of the crimes for which he was convicted. Petition, 32.

## I. STANDARD GOVERNING PETITIONS FOR A WRIT OF HABEAS CORPUS

For factual and legal issues that have been adjudicated in state court, a federal district court may only grant a writ of habeas corpus if the state court's adjudication 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A state court's determination is contrary to clearly established federal law if it applies a rule that contradicts the law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a Supreme Court decision but arrives at a different result. Williams v. Taylor, 529 U.S. 362, 406-06 (2000). A state court's determination involves an unreasonable application of clearly established federal law if it identifies the correct governing legal principle from Supreme Court decisions, but unreasonably applies that principle to the facts of the petitioner's case. Williams, 529 U.S. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411.

Petitioner acknowledges that his claims are governed by the terms of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) as set forth above and as interpreted by the Supreme Court in Williams. Petition, 9. However, while asserting that he is entitled to relief even under the AEDPA deferential standard, he urges the Court to find that the deference mandated under the AEDPA is an infringement on the judicial branch of government by Congress and that the provision is thus unconstitutional. Petition, 9-13. Petitioner relies upon dissents in cases from the First, Sixth, Seventh and Ninth Circuits in support of his argument.

The undersigned is not persuaded by Petitioner's arguments or the dissents upon which he relies. Rather, the undersigned finds persuasive the majority opinion in Evans v. Thompson, 518 F.3d 1, 3 (1st Cir. 2008), cert. denied 129 S. Ct. 255 (2008). In Thompson, the First Circuit rejected the argument that the AEDPA deference violates the separation of powers doctrine, and it cited cases from the Fourth, Seventh and Ninth Circuits where those courts reached similar holdings. Evans v. Thompson, 518 F.3d at 3; Crater v. Galaza, 491 F.3d 1119 (9th Cir. 2007); Green v. French, 143 F.3d 865 (4th Cir. 1998), abrogated in part by Williams v. Taylor, 529 U.S. 362 (2000); Lindh v. Murphy, 96 F.3d 856 (7th Cir. 1996), rev'd on other grounds, 521 U.S. 320 (1997); see also Dufrene v. Brazoria County District Attorney's Office, No. 04-41740, 146 Fed. Appx. 715, 717 (5th Cir. Aug. 16, 2005) (§ 1983 case finding AEDPA did not violate separation of powers doctrine).

While the undersigned is not aware of any Tenth Circuit case addressing whether the application of the AEDPA deference violates the separation of powers doctrine or any cases

from this court addressing that issue, the United States District Court for the Eastern District of Oklahoma rejected the argument in an unpublished case from 2006. <u>Cummings v. Gibson</u>, CIV-99-447-S, 2006 WL 2434462, at *6 (E.D. Okla. Aug. 11, 2006), <u>aff</u>, 506 F.3d 1211 (10th Cir. 2007). Accordingly, the undersigned rejects Petitioner's arguments that application of the AEDPA deferential standard violates the separation of powers doctrine.

## II. DISCUSSION

### A. KNOWING AND VOLUNTARY <u>ALFORD</u> PLEAS

Petitioner claims that his "overarching constitutional claim" is that the trial judge coerced his <u>Alford</u> pleas, rendering those pleas involuntary. Petition, 14. In support of this argument, Petitioner alleges that the trial judge was biased against him as evidenced by (1) her express opinion that the State's witnesses were credible, (2) her husband's contact with a member of the church at which Petitioner had been the youth minister, (3) her personal internet research regarding sentencing issues, (4) her "pre-judged punishment in the event that [Petitioner] was sentenced by a jury," and (5) her coercing of Petitioner to enter <u>Alford</u> pleas to the charges against him. Petition, 15.

More specifically, Petitioner contends that during a pretrial motion hearing, the trial judge informed him that the State wins most of its trials but that Petitioner could enter an <u>Alford</u> plea, which the trial judge described as a "blind plea" that does not admit guilt but states that the evidence is sufficient for the jury to convict. Petition, 20. Petitioner claims that the trial judge warned him that if he were to proceed to trial none of the time imposed would be suspended or run concurrently and that he was likely to receive a substantial

sentence if convicted. Petition, 21-22. Petitioner admits that he nevertheless proceeded to trial but that on the fourth day of trial, the trial judge called him to the bench; advised him that based on her observations, she believed that the jury thought Petitioner was guilty; and gave him ten minutes to consider whether to enter pleas. Petition, 23.

Petitioner contends that he understood an Alford plea to have the effect of shifting the trial from the jury to the court, such that he would be allowed to present evidence, and the court would determine his guilt or innocence. Petition, 23-24. Petitioner argues that when a judge can be guaranteed to increase a sentence if a defendant does not plead, the prosecution gains the advantage in the bargaining process, and thus, a judge's participation in plea negotiations risks overbearing the will of the defendant. Petition, 25-26. Therefore, Petitioner contends that he was deprived of his due process rights under the Fourteenth Amendment and of his right to an impartial judge. Petition, 28.

Respondent claims that the Oklahoma Court of Criminal Appeals' rejection of Petitioner's judicial coercion claim "was not contrary to clearly established federal law." Response, 3, 10. Respondent also contends that the record shows that Petitioner's pleas were voluntarily and knowingly entered. Response, 5, 10.

The Due Process Clause of the Fourteenth Amendment requires that a defendant's plea of guilty be knowingly and voluntarily entered. Boykin v. Alabama, 395 U.S. 238, 242 (1969); Miles v. Dorsey, 61 F.3d 1459, 1465-66 (10th Cir. 1995). In determining the validity of a nolo contendere or guilty plea, the standard remains "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the

defendant." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)).[3] "Whether a plea is voluntary is a question of federal law, but this legal conclusion rests on factual findings and inferences from [the state court's] findings." Fields v. Gibson, 277 F.3d 1203, 1212 (10th Cir. 2002) (citing Parke v. Raley, 506 U.S. 20, 35 (1992) (pre-AEDPA case)). A state court guilty plea is constitutional "if the circumstances demonstrate that the defendant understood the nature and the consequences of the charges against him and that the defendant voluntarily chose to plead guilty." Miles, 61 F.3d at 1466 (citing Boykin, 395 U.S. at 242-44). The Tenth Circuit has long held that "a summary of facts form alone may be sufficient to establish a knowing and voluntary plea." Cone v. Dutton, No. 91-6325, 1992 WL 181984, at *2 (10th Cir. July 30, 1992) (citing Moore v. Anderson, 474 F.2d 1118, 1119-20 (10th Cir. 1973)); Hoffman v. Young, No. 00-6382, 23 Fed. Appx. 885, 887 (10th Cir. Oct. 12, 2001) (same).

Petitioner completed a seven page form titled "Alford Plea and Summary of Facts" which the trial judge reviewed both when accepting Petitioner's Alford pleas and in the hearing on Petitioner's motion to withdraw his pleas. Original Record, 285-91; Plea Proceedings, Tr. 5; Proceeding to Withdraw Alford Pleas, Tr. 3.

In the Alford Plea and Summary of Facts form, Petitioner stated that he understood the nature and consequences of the plea proceeding, that he had received a copy of the

---

[3]The standard for a guilty plea is appropriate in the analysis since the legal effect of a nolo contendere or Alford plea under Oklahoma law is the same as that of a guilty plea. Braun v. Ward, 190 F.3d 1181, 1188-89, n. 6 (10th Cir. 1999).

Information, that he had read the allegations against him, and that he understood that he was charged with ten counts of indecent or lewd acts with a child under sixteen and with four counts of rape I by instrumentation. Original Record, 285-287. Petitioner acknowledged the range of punishment for conviction of the indecent or lewd acts charges was up to twenty years imprisonment on each count and that the punishment for a conviction of rape I was a minimum of five years up to life imprisonment on each charge. Original Record, 286-87. He indicated his understanding of the valuable constitutional rights he would have at trial, and he acknowledged that he was giving up those rights by entering his <u>Alford</u> pleas. Original Record, 288. He also acknowledged that a jury could find him guilty beyond a reasonable doubt based upon the evidence. Original Record, 289. Petitioner represented that he had not been forced or promised anything to enter his pleas and that his pleas were of his own free will and without coercion or compulsion of any kind. Original Record, 289.

The transcript from the plea proceedings further confirms that the Petitioner understood the charges against him, that he freely and voluntarily entered his <u>Alford</u> pleas, and that he understood the range of punishment he faced. The trial judge confirmed with Petitioner that he was entering his <u>Alford</u> pleas to ten counts of indecent or lewd acts with a minor child and to four counts of rape I by instrumentation. Plea Proceedings Tr. 5. She made sure that Petitioner understood the range of punishment he faced and the constitutional rights he was giving up by entering his pleas. Plea Proceedings Tr. 6. She verified with Petitioner that by entering <u>Alford</u> pleas, he was admitting that there was sufficient evidence by which a jury could find him guilty. Plea Proceedings Tr. 8. The trial judge insured that

Petitioner was entering his pleas of his own free will and that no one was forcing him to enter the pleas. Plea Proceedings Tr. 8. She noted that the State had asked her to incorporate by reference the evidence presented at the preliminary hearing, the evidence that had been presented at the trial before Petitioner chose to enter his <u>Alford</u> pleas, as well as the opening statement by the prosecutor as to what evidence he would present at trial. Plea Proceedings Tr. 8. The trial judge made explicit findings that Petitioner understood the nature and the consequences of the proceedings, that his pleas were knowingly and voluntarily entered, that he was competent to enter the pleas, and that there was a factual basis for the pleas. Plea Proceedings Tr. 8-9. She accepted the pleas and found him guilty as charged without any objection or protestations by Petitioner. Plea Proceedings Tr. 9.

The above certainly demonstrates that Petitioner understood the nature and consequences of his pleas, understood the charges to which he was pleading and understood the possible range of punishment he faced. Petitioner's contention that he understood an <u>Alford</u> plea to have the effect of letting the court rather than the jury decide the case after he presented evidence, Petition, 23-24, is not well taken in light of his sworn statements during the plea proceedings and his lack of protest when the judge found him guilty. "Solemn declarations in open court carry a strong presumption of verity." <u>United States v. Estrada</u>, 849 F.2d 1304, 1306 (10th Cir. 1988), <u>quoting</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977).

As to the alleged coercion and bias by the trial judge, the record reveals that the first time the judge discussed the possibility of Petitioner entering guilty or <u>Alford</u> pleas on the record was at a motion hearing she conducted on March 1, 2005, at which the Petitioner was

present with his attorneys. After she ruled on some pending motions, she addressed Petitioner directly:

> I'm going to tell you what I tell every Defendant, because I'm in jury trial about every other week and the State of Oklahoma wins about 98 percent of the time. And the reason they win is not because of skullduggery, the reason they win is because they have the evidence and their witnesses are credible. They don't always win, but they usually do.

Motion Hearing Tr. 83. She added that there were three ways the Petitioner could close his case. First, she told him that he and the State could reach a negotiated plea agreement, which she would generally follow. Motion Hearing Tr. 83. Second, she told the Petitioner that he could enter either a blind guilty or <u>Alford</u> plea, where there would be no agreement between the parties and the judge would decide the proper sentence to impose. Motion Hearing Tr. 83-84. Third, she told the Petitioner that he could have a jury trial. Motion Hearing Tr. 84. She explained that if Petitioner elected to go to trial, the jury would decide the punishment and if the jury found him guilty of more than one count, the counts would be run consecutively and none of the time would be suspended. Motion Hearing Tr. 85. She added that when the matter is left for the judge to decide, she would often run counts concurrently and that there may be consideration for suspending some of the time. Motion Hearing Tr. 85. She then stated that she had seen numerous cases where a defendant elected to proceed to trial and she gave several examples of cases she had tried since December 2004, where a defendant had received a sentence substantially longer than that offered by the State during plea negotiations. Motion Hearing Tr. 86. She then stated:

> And I have looked at the evidence as it is alleged. None of us can tell you exactly how this evidence will come off on the witness stand. I mean, we don't know. We'll all be looking at it at the same time you are. I have to tell you that it would be my impression based on what I've seen, that the State has credible witnesses and if the jury believes them you are going to get whacked big time and that's not a legal term, that's just the truth.

Motion Hearing Tr. 86. She then asked the State if there was any offer on the table to which the prosecutor stated that he had offered the Petitioner a plea deal to serve twenty-five years of incarceration and an additional twenty years suspended. Motion Hearing Tr. 87. The judge concluded her remarks by saying "Well, you can bet your bottom dollar that if you get convicted of any of these counts of rape you're going to be doing more than that." Motion Hearing Tr. 87.

When a petitioner alleges that his pleas violated his due process rights because of the trial judge's alleged improper involvement in the plea process, the petitioner must show that the trial judge's participation caused "him not to understand the nature of the charges against him or the consequences of the guilty plea[s] or [that] the judge's participation coerced [him] to enter into a plea bargain involuntarily." Miles v. Dorsey, 61 F.3d 1459, 1467 (10th Cir. 1995) (internal quotation marks omitted); McCray v. McKune, No. 06-3229, 208 Fed. Appx. 669, 671 (10th Cir. Dec. 12, 2006) (same).

The undersigned agrees with the Oklahoma Court of Criminal Appeals that the trial judge's statements were a "candid assessment of the case" and an attempt to "keep [Petitioner] fully informed of his options." Wonderly v. State, No. C-2005-834, at 6 (Okla. Crim. App. June 8, 2007) (attached to Response as Exhibit 2).

The only statement of the trial judge that could be construed as coercive is her statement that if Petitioner decided to proceed to trial and the jury were to find him guilty, none of his time would be suspended or run concurrently. Motion Hearing Tr. 85. However, when that comment is set against the entire record, it loses any coercive effect. First, while not condoning the practice, the undersigned notes that it is apparently that judge's practice to generally not suspend any part of a sentence or to run any sentence concurrent when a defendant elects to go to trial. In fact, she later told Petitioner that she rarely suspends or runs concurrently any time imposed by a jury, and she did not anticipate that happening in Petitioner's case. Proceeding to Withdraw <u>Alford</u> Pleas, Tr. 37. Thus, she was basically telling the Petitioner that if he went to trial and was found guilty of any or all the charges, he likely would have the sentences run consecutively and no part of the sentences would be suspended. If this was her practice, it was better for Petitioner to know this in weighing the options available to him and their consequences. Petitioner was fully informed of the possible range of punishment he faced and he was informed by the trial judge of her opinion that a jury would likely impose a harsher sentence than he would receive through either a negotiated plea or a blind plea, if the jury found him guilty.

While Petitioner maintains his innocence of the charges, he clearly knew from the preliminary hearing and from the start of trial the evidence the jury would hear in determining whether or not he was guilty of the charges. Petitioner was the children's pastor at the First Church of Nazarene in Bethany, Oklahoma. Six young girls, who were around twelve years old at the time of the preliminary hearing and for whom he was the children's

pastor testified that Petitioner inappropriately touched them on their breasts, vagina and/or buttocks while they were in the third to the fifth grade in school. Preliminary Hearing Tr. 21-31, 56-69, 90-102, 122-135, 156-161, 181-88. Three of the girls testified that Petitioner digitally penetrated their vaginas. Preliminary Hearing Tr. 26-30, 99, 131-34.

Additionally, one of Petitioner's roommates testified at preliminary hearing and two of the roommates had given testimony at trial before Petitioner decided to stop the trial and enter his Alford pleas. At the preliminary hearing, the roommate testified that Petitioner would always close something on his computer when any of the roommates entered the room. Preliminary Hearing Tr. 206. The roommate looked on Petitioner's computer and discovered approximately five pornographic photos of children under the age of ten years old. Preliminary Hearing Tr. 207-08. The roommate approached a school counselor and during a meeting with Petitioner, the school counselor, and the roommate, Petitioner admitted that he had looked at child pornography, stating that it had started out as curiosity but ended up with him leaning towards child pornography. Preliminary Hearing Tr. 209-10. The roommate testified consistently at trial but added that one of the pictures he had seen on Petitioner's computer had the words "kiddie porn." Trial Tr. 64. A second roommate testified at trial about Petitioner minimizing or closing windows on his computer when any of the roommates would enter the room. Trial Tr. 80. The roommate testified that in looking on Petitioner's computer, he found several Yahoo discussion groups that Petitioner had been accessing with titles such as "preteen girls" or "young teen girls." Trial Tr. 85. That roommate also testified that any time one of the roommates was at home, the door was almost

13

never locked. Trial Tr. 82. However, he described one occasion when he came home with his girlfriend to find the door locked and Petitioner was inside with a young female he estimated to be in the fourth or fifth grade and a young male, he estimated to be in the second grade, who Petitioner claimed he was babysitting. Trial Tr. 82. The roommate testified that this concerned the roommates. Trial Tr. 83.

In addition to all of this evidence, the Petitioner knew from the judge's ruling at the motion hearing that the jury would hear from another young girl who would testify as to totally inappropriate instant messaging between her and Petitioner when he was her youth minister. Motion Hearing Tr. 24-36. Some of the instant messages were summarized by the prosecutor in his opening statement, Trial Tr. 40-43, and the young girl testified as a victim impact witness after Petitioner entered his <u>Alford</u> pleas. Plea Proceedings Tr. 33-36. Further, the judge had ruled that the head children's minister at the church at that time would be allowed to testify as to reports she received from parents about their concerns with Petitioner's behavior around the children before the events in question and about the discipline she imposed on him, including a warning and later probation. Motion Hearing Tr. 38-43; Trial Tr. 16-18.

In consideration of all of this evidence, the undersigned agrees with the Oklahoma Court of Criminal Appeals that the trial judge's statements were a "candid assessment of the case."

This appears to be a classic case of "buyer's remorse" where a habeas petitioner pleads guilty or nolo contendere, gets a sentence that, either at the time of sentencing or after

he begins to serve the sentence, he decides is too long and then he wants to withdraw his plea. Petitioner came close to admitting as much when at the hearing on the motion to withdraw his Alford pleas he told the judge that "part" of his reasons for wanting to withdraw his pleas was that he was unhappy with the sentences she imposed. Proceedings to Withdraw Alford Pleas Tr. 6-7. Later, he candidly admitted that if he had gotten a suspended sentence, he probably "could live with it." Proceedings to Withdraw Alford Pleas, Tr. 21, 26-27.

Finally, the record does not support Petitioner's judicial bias claim. A petitioner seeking federal habeas relief may make out a judicial bias claim in two ways. First the petitioner may set forth factual allegations showing actual bias. Davis v. LeMaster, No. 99-2161, 2000 WL 702408, at *4 (10th Cir. May 26, 2000) (citing Nichols v. Sullivan, 867 F.2d 1250, 1254 (10th Cir. 1989)). Second, the petitioner may show an appearance of bias but must show "a strong, direct interest in the outcome of [the] case . . . sufficient to overcome th[e] presumption of evenhandedness." Davis, 2000 WL 702408, at *4 (quoting Fero v. Kerby, 39 F.3d 1462, 1478-79 (10th Cir. 1994)). The trial judge treated Petitioner evenhandedly, and nothing shows either actual or an appearance of bias on her part.

Prior to trial and on a motion by Petitioner, the trial judge dismissed six counts against Petitioner. Motion Hearing Tr. 74, 78. At the motion hearing and after explaining to Petitioner his options of entering a negotiated plea, a blind plea or going to trial, the judge told Petitioner as summarized above, that no one knew how the evidence would come off on the witness stand. Motion Hearing Tr. 86. She added that she knew Petitioner's lawyers and

considered them to be friends and that she had no trouble telling either Petitioner's attorneys or the State's attorneys "no." Motion Hearing Tr. 87. During the plea proceedings she made it clear that she had an open mind as to sentencing, that she would read the pre-sentence investigation report, listen to the victim impact testimony, and hear from the attorneys prior to imposing sentence. Plea Proceeding Tr. 7. She told the Petitioner she honestly did not know what sentence she would impose, but there was no question in her mind that Petitioner would be serving some prison time. Plea Proceedings Tr. 7. After the judge heard the victim impact testimony she gave Petitioner's friends and family an opportunity to address her in court, but the witnesses chose not to say anything at that time. Plea Proceedings Tr. 39-40. She also addressed the courtroom participants and spectators during the plea proceedings by stating:

> There are people who will always believe that [Petitioner] has done nothing wrong. And that is a choice that they make. I don't fault you for any of that. I would tell you all now what I told [Petitioner] before the trial began. Based on the totality of the evidence that I have examined I believe [Petitioner] to be guilty. I believe the jury would have found [Petitioner] guilty, and I believe that the sentence that would have been imposed by this jury would have been substantial.

> You don't have to agree with me. I'm not asking you to do that. I am, however, asking you to understand and respect that I come into this matter without a side to take. I don't have any biases for or against any of the individuals here. And you may not agree with my decisions. It would be my hope that you believe that you are being listened to and that - and that I'm being as fair as I possibly can. . . But I'm doing everything that I know to insure the fairness of this courtroom.

Plea Proceedings Tr. 38-39. She complimented Petitioner's family on their conduct during the proceedings and expressed sympathy for them over their ordeal. Plea Proceedings Tr. 37, 41.

During the sentencing proceeding, the trial judge revealed that she had received and read somewhere around forty letters in support of Petitioner and that she had reviewed other materials submitted by both Petitioner's attorneys and the attorneys for the State. Sentencing Tr. 3-4. She then heard from Petitioner before imposing the sentences. None of this shows any bias on her part.

Petitioner also complains the trial judge's alleged bias was evidenced by her husband's contact with a member of the church at which Petitioner had been the youth minister. Petition, 15. Although it is not clear from the record the extent of the contact between the member of the church and the judge's husband, what appears clear is that the member of the church was supporting the Petitioner and trying to influence the judge through her husband. Sentencing Tr. 8-9; Proceeding to Withdraw Alford Pleas Tr. 35. The judge said that her husband did not talk to her about the conversation and she only learned of it a couple of weeks before sentencing when she was reviewing letters written in support of Petitioner. Sentencing Tr. 8. At that time, she contacted attorneys for both parties and offered to recuse, but neither party's attorneys requested she do so. Sentencing Tr. 8, 11. This incident certainly does not show any bias on the part of the trial judge. It is obvious that Petitioner and his lawyer discussed whether to ask the judge to recuse, but made a strategic decision not to do so. Sentencing Tr. 8, 11; Proceeding to Withdraw Alford Pleas Tr. 24-26,

17

35.  Petitioner's protestations that he did not know he could have asked her to recuse simply have no credibility in the face of the record.  Sentencing Tr. 8, 11; Proceeding to Withdraw <u>Alford</u> Pleas Tr. 24-26, 35; <u>see</u> Affidavit of Petitioner, 3, para. 10 (attached to Petition as Document 1-7).  Accordingly, the undersigned finds that Petitioner has failed to make out his claims of judicial coercion and bias and thus finds that Petitioner's pleas were knowingly and voluntarily entered.

### B. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Petitioner contends that his trial counsel rendered ineffective assistance of counsel in failing to accept the trial judge's offer to recuse herself.  Petition, 16.  Petitioner claims that the trial judge's review prior to sentencing of internet articles concerning pedophilia amounted to an independent investigation which violated his due process rights.  Petition, 17.  Thus, he argues that trial counsel's failure to seek the trial judge's recusal constitutes constitutionally deficient assistance.  Petition, 18.  Petitioner argues that this deficient assistance also prejudiced him because the trial judge used those articles to rebut the information in his expert's report.  Petition, 19.  He claims that counsel was also ineffective for Sixth Amendment purposes because he failed to request a continuance of the sentencing hearing in order to present testimony from his defense expert, Dr. Kishur.  Petitioner, 18.

Lastly, Petitioner claims that his trial counsel rendered ineffective assistance in failing to argue before the trial court that Petitioner's pleas were not knowing and voluntary because trial counsel had misadvised Petitioner regarding application of the 85% rule to Petitioner's case.  Petition, 29.  Petitioner claims that this failure prejudiced him because had the

18

argument been raised, the Oklahoma Court of Criminal Appeals would have considered it on certiorari and would have found Petitioner's pleas unknowing and involuntary under state law. Petition, 29.

Regarding Petitioner's recusal claim, Respondent argues that Petitioner's claims of ineffective assistance of trial counsel do not meet the criteria set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Response, 11. Respondent contends that Petitioner has not shown that the internet articles affected the trial judge's decision. Response, 13. Respondent also argues that Petitioner has not shown that the trial judge's recusal would have resulted in a lesser sentence. Response, 16. Respondent argues that Petitioner makes several assumptions in contending that his attorney should have sought a continuance to secure Dr. Kishur's presence at the sentencing hearing. Response, 15-16. Regarding Petitioner's 85% rule claim, Respondent argues that trial counsel's failure to apprise Petitioner of the 85% rule's applicability did not prejudice him. Response, 18.

To establish that counsel was ineffective, a habeas petitioner must show 1) counsel's performance was constitutionally deficient and 2) counsel's deficient performance was prejudicial. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). Performance is deficient if counsel's "representation [falls] below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. Errors are prejudicial if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. Counsel's performance is evaluated from the attorney's perspective at the time the assistance is rendered and considered in light of all the

circumstances prevailing at that time. <u>Strickland</u>, 466 U.S. at 689. There is a strong presumption that counsel's actions fell within the "wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689. Because both deficient performance and prejudice must be established to prove ineffective assistance, it is appropriate to consider whether prejudice is shown from an alleged error without determining whether counsel performed deficiently. <u>Strickland</u>, 466 U.S. at 697. The Supreme Court has extended this test to guilty or <u>Alford</u> plea challenges based on ineffective assistance of counsel. <u>Hill v. Lockhart</u>, 474 U.S. 52, 58 (1985). In this context, the first prong of the test is met if Petitioner proves that counsel's advice was not within the wide range of competence demanded of attorneys in criminal cases. <u>Hill</u>, 474 U.S. at 56. The second prong is met if Petitioner shows that there is a reasonable probability that, but for counsel's errors, he would not have entered his <u>Alford</u> pleas and instead would have insisted on going to trial. <u>Id</u>. at 59.

## 1. FAILURE TO SEEK TRIAL JUDGE'S RECUSAL

Petitioner mischaracterizes the trial judge's internet research and her statements regarding the expert's report.[4] At the sentencing hearing, the trial judge stated that she had received a letter solicited by Petitioner's counsel in support of Petitioner which stated that at most Petitioner is a pedophile. Sentencing Hearing Tr. 6. In addressing this comment, the trial judge stated that there is no legal definition of a pedophile in Oklahoma, and in an attempt to define it, she had consulted Petitioner's expert's report and various internet articles

---

[4]Petitioner did not file a copy of his expert's report with this Court.

which confirmed that there were many definitions of a pedophile. Sentencing Hearing Tr. 6-7. She stated that the expert's report found that Petitioner did not seem to be predominantly attracted to preadolescent children. Sentencing Hearing Tr. 7. She then stated that the articles she found indicated that some child molesters are situational offenders and some are attracted to both preadolescent children and adults. Sentencing Hearing Tr. 7. Thus, rather than using the internet articles to rebut or disprove the expert's report, the trial judge used them to address how to properly define a pedophile and how to give proper meaning to the expert's statement that Petitioner is not predominantly attracted to children. Petitioner has failed to show that his trial counsel rendered ineffective assistance in failing to seek the trial judge's recusal. Further, as discussed earlier, it is clear from the record that Petitioner and his attorney discussed the trial judge's offer to recuse and for strategic reasons decided not to request her recusal. Further, Petitioner has failed to show how he was prejudiced by counsel's failure to request a continuance to allow his expert to be present at sentencing. Petitioner has not shown how the doctor's testimony would have helped him, and in fact, it appears the doctor's testimony would not have been helpful. Sentencing Tr. 22-24. ("If a perpetrator puts a victim on the stand, that they should go away and never get out."). See also, Proceedings to Withdraw Alford Pleas, Tr. 38.

## 2. FAILURE TO RAISE 85% RULE CLAIM

The 85% rule became effective on March 1, 2000, and it states that a person shall serve not less than 85% of the sentence imposed if the person commits an enumerated crime, such as those to which Petitioner entered his pleas. Okla. Stat. tit. 21, § 12.1; 13.1.

The acts with which Petitioner was charged were alleged to have occurred at varying dates between August 1, 1997, through the first day of June 2003. Amended Information, Original Record, 104-08. This was due to the fact that, as is often the case, the young victims could not be specific to when the various acts against them had occurred. Thus, if the acts occurred only before March 1, 2000, Petitioner would not have been subject to the 85% rule. Petitioner's lead counsel at trial was John Coyle, a preeminent criminal defense attorney in Oklahoma and an attorney who possess an in depth knowledge of Oklahoma and federal criminal law. In fact, Mr. Coyle argued on appeal that although the State alleged the acts occurred in "a sweeping range" both before and after the law became effective, the State failed to prove that the crimes occurred after March 1, 2000. See Petitioner's Original Brief, 18-22 (attached to Response as Exhibit 1). The Oklahoma Court of Criminal Appeals refused to address the argument as it had not been raised before the trial court when Petitioner sought to withdraw his <u>Alford</u> pleas. Opinion Denying Certiorari, 3-4 (attached to Response as Exhibit 2). Given the inexactness of the dates on which the molestations were alleged to have occurred and the wide time period during which they allegedly occurred, the undersigned cannot say that Petitioner's trial counsel rendered ineffective assistance. More importantly Petitioner cannot show that but for the lack of advice from his counsel as to the 85% rule, he would have insisted on going to trial as the trial judge specifically advised Petitioner prior to the time he entered his pleas of the 85% rule's applicability. Motion Hearing Tr. 85.

## C.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Petitioner claims that his appellate counsel's[5] representation was constitutionally insufficient because counsel failed to provide the Oklahoma Court of Criminal Appeals with the transcript from the March 1, 2005, motion hearing in which the trial judge discussed the possibility of him entering a plea.  Petition, 30. Petitioner alleges that without this transcript the Oklahoma Court of Criminal Appeals evaluated his judicial coercion argument based only on the transcript from the hearing on his motion to withdraw his <u>Alford</u> pleas in which the trial judge recollected her comments to Petitioner at the motion hearing.  Petition, 30. Petitioner claims that the Oklahoma Court of Criminal Appeals' failure to review the whole record prejudiced him because the Court considered only a summary of the trial judge's comments which did not accurately reflect the "stark language" the trial judge used in addressing him.  Petition, 30-31.  He claims that had the record been complete, the outcome of his appeal would likely have been different.  Petition, 31.

Petitioner also claims that his appellate counsel's representation was constitutionally deficient because counsel failed to argue in his petition for certiorari that he rendered ineffective assistance in failing to argue the 85% rule issue before the trial court.  Petition, 31.  Petitioner claims that had this argument been raised, the Oklahoma Court of Criminal Appeals would likely have found his pleas involuntary and unknowing under state law. Petition, 31.

---

[5]Petitioner's appellate counsel was the same as his trial counsel.

23

Respondent claims that the trial judge's comments during the motion hearing were not coercive, and regardless, the Oklahoma Court of Criminal Appeals considered those comments in its order denying rehearing and did not find them coercive. Response, 18-19. Thus, Respondent argues that Petitioner has failed to establish the prejudice prong of Strickland. Response, 19. Respondent also argues that since the Oklahoma Court of Criminal Appeals noted that the trial judge specifically advised the Petitioner prior to his pleas that his crimes were subject to the 85% rule, Petitioner cannot show prejudice. Response, 19.

"The Strickland test also applies to claims of ineffective assistance by appellate counsel." United States v. Gaines, No. 09-5104, 358 Fed. Appx. 34, 37 (10th Cir. Dec. 22, 2009) (citing Smith v. Robbins, 528 U.S. 259, 285-86 (2000)). Further, in analyzing an ineffective assistance of appellate counsel claim based upon the failure to raise an issue on appeal, the habeas court should:

> [L]ook to the merits of the omitted issue, generally in relation to the other arguments counsel did pursue. If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance; if the omitted issue has merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance.

Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003) (citations and internal quotation marks omitted). Unless there is a reasonable probability that the omitted claim would have

resulted in a reversal on appeal, there is no ineffective assistance of appellate counsel.  <u>Neill</u> <u>v. Gibson</u>, 278 F.3d 1044, 1057 n.5 (10th Cir. 2001).

## 1. FAILURE TO DEVELOP THE RECORD ON CERTIORARI

Petitioner mischaracterizes the Oklahoma Court of Criminal Appeals' statements regarding the record on certiorari.  The Oklahoma Court of Criminal Appeals summarized Petitioner's argument on certiorari as arguing that his pleas were not knowing and voluntary because of certain statements that trial judge made to him during a <u>mid-trial</u> recess. <u>Wonderly v. State</u>, No. C-2005-834, at 4-5 (Okla. Crim. App. June 8, 2007) (attached to Response as Exhibit 2).  The Court then stated:

> Wonderly only designated a <u>partial transcript of his jury trial</u> for inclusion in the record.  As a result, the single trial transcript available to us includes opening statements of counsel, testimony of the State's first two witnesses, and nothing more.  Significantly, the transcript does not include the portion of the trial in which the judge made the comments Wonderly claims pressured him into entering his <u>nolo contendere</u> plea.  Because we can only review a claim brought in a petition for certiorari on the basis of the record made available to us by the petitioner, in this instance, we must rely on the transcript of the change of plea hearing in which the judge recounted her recollection of what she said to Wonderly at trial.  Wonderly does not challenge the accuracy of the judge's statements as recorded in the plea hearing transcript and in fact quotes them at length in his brief.

<u>Wonderly</u>, No. C-2005-834, at 6 n.2 (emphasis added).  Petitioner's appellate counsel did not include a transcript of the comments the trial judge made to Petitioner during trial, nor has any such transcript been provided to this court.  However, the transcript of the March 1, 2005, motion hearing was available, as shown by the Oklahoma Court of Criminal Appeals' citation to the trial judge's statements contained in that transcript.  <u>Wonderly v. State</u>, No.-C-

2005-834, at 4 n.2 (Okla. Crim. App. July 25, 2007) (Order Denying Petition for Rehearing) (attached to Response as Exhibit 3). Regardless, because the undersigned has already rejected Petitioner's judicial coercion claim, his ineffective assistance of counsel claim based on failure to develop the record on judicial coercion must also fail because Petitioner cannot show prejudice. Abiodun v. Maurer, No. 07-1184, 257 Fed. Appx. 111, 116 (10th Cir. Dec. 4, 2007) ("Counsels' failure to raise an unmeritorious issue at trial or on appeal does not constitute constitutionally ineffective assistance of counsel." (citing Sperry v. McKune, 445 F.3d 1268, 1274-75 (10th Cir. 2006)).

## 2. FAILURE TO RAISE 85% RULE CLAIM ON CERTIORARI

Petitioner claims that appellate counsel failed to raise his ineffectiveness while serving as trial counsel since he failed to raise the 85% issue before the trial judge when Petitioner sought to withdraw his Alford pleas. Petition, 31. However, Petitioner has failed to show prejudice from any alleged error of appellate counsel to raise his claim on his certiorari appeal because the Oklahoma Court of Criminal Appeals addressed the claim on the merits in affirming the denial of post-conviction relief and found the claim to be without merit. See Order Affirming the Denial of Post-Conviction Relief, 3-4 (attached to Response as Exhibit 6). The Petitioner has failed to show that the decision by the Oklahoma Court of Criminal Appeals was contrary to or involved an unreasonable application of clearly established federal law or that it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court.

## C. ACTUAL INNOCENCE

Petitioner maintains that he is actually innocent of the rape and lewd acts convictions and he cites alleged flaws in the State's case as shown by his investigative reports. Petition, 32. In support of this claim, Petitioner also alleges that one of the witnesses recanted, stating that Petitioner "never did anything to her." Petition, 32. More specifically, Petitioner contends that one of the complaining witnesses, "M.I." allegedly told one of her friends, "L.G." that Petitioner never did anything to her. Petition, 32. He claims this evidence was only brought out at sentencing and had he known about this "recantation," he would have insisted on going to trial. Petition, 32. Respondent argues that Petitioner's actual innocence claim fails because he has not identified any evidence affirmatively demonstrating his innocence. Response, 20. Alternatively, Respondent argues that the alleged recantation does not overcome the evidence at the preliminary hearing and trial showing Petitioner's guilt. Response, 20.

There is no question that Petitioner's attorneys knew of this evidence as they supplemented Petitioner's witness list on March 2, 2005, with the name of "L.G." and represented that "L.G." would testify that "M.I." said that Petitioner never did anything to her. Original Record, 264. Petitioner continues to rely upon "L.G.'s" statement here. See Investigative Report (attached to Petition as Document 1-14). Interestingly, no evidence has been presented by "M.I." that she recanted her accusations and it is noted that "M.I.'s" mother testified as a victim impact witness concerning how the Petitioner's actions affected her daughter. Plea Proceedings Tr. 18-19. Regardless, Petitioner knew about this alleged

evidence before he entered his <u>Alford</u> pleas as his attorneys advised the jury of this during their opening statement.  See Affidavit of Petitioner, 6-7, para. 21 (attached to Petition as Document 1-7).  Further, Petitioner's attorneys argued during the motion hearing held on March 1, 2005 that Petitioner wanted to introduce hearsay statements from "B.I.", either a sister or brother of "M.I.," and Petitioner was present during that hearing.  Motion Hearing Tr. 65-68.  Although the undersigned does not know what "B.I." would have allegedly testified to, presumably Petitioner intended to use his/her testimony to impeach, "M.I.," had "M.I." testified.  Additionally, during the hearing on Petitioner's motion to withdraw his <u>Alford</u> pleas, the judge noted that "L.G." had been one of Petitioner's most ardent supporters and had given an interview where she stated that she did not believe any of the things with which Petitioner had been charged.  Proceedings to Withdraw <u>Alford</u> Pleas, Tr. 40.  Yet, the trial judge noted that "L.G." had said that Petitioner repeatedly gave little girls "wedgies," which Petitioner denied, causing the judge to question Petitioner's credibility.  Proceedings to Withdraw <u>Alford</u> Pleas, Tr. 40.

To the extent Petitioner is asserting an actual innocence claim as a stand alone claim, his claim must fail.  "[A]n assertion of actual innocence, although operating as a potential pathway for reaching otherwise defaulted constitutional claims, does not, standing alone, support the granting of the writ of habeas corpus."  <u>LaFevers v. Gibson</u>, 238 F.3d 1263, 1265 n.4 (10th Cir. 2001); <u>see also</u> <u>Herrera v. Collins</u>, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the

underlying state criminal proceeding."). Since a freestanding claim of actual innocence is not a basis for federal habeas relief, Petitioner's claim does not warrant relief.

To the extent that Petitioner is asserting his pleas were unknowing and involuntarily entered because he did not know of this evidence, his claim is rejected. First, as noted above, his attorneys apparently told the jury about this evidence during the opening statements at trial and yet a few days into trial, Petitioner entered his <u>Alford</u> pleas. What appears to be the true reason the Petitioner entered his <u>Alford</u> pleas is evidenced by statements in his brief for a certiorari appeal to the Oklahoma Court of Criminal Appeals where his attorney stated:

> The entire time [Petitioner's roommates, Petitioner's head youth minister, the parents of some of the victims, and the young girl with whom Petitioner instant messaged] are testifying [Petitioner] was in court and able to see the jury react to this highly inflammatory and cumulative testimony.

Petitioner's Original Brief, 14 (attached to Response as Exhibit 1). It is recommended that Petitioner's claim be rejected.

## <u>RECOMMENDATION</u>

Based on the foregoing findings, it is recommended that the petition for a writ of habeas corpus be denied. Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court on or before August 19, 2010, in accordance with 28 U.S.C. § 636 and Fed.R.Civ.P. 72. Petitioner is further advised that failure to file a timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal issues contained herein. <u>Moore v. United States</u>,

950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all the issues referred to the undersigned Magistrate Judge in the captioned matter.

Dated this 30th day of July, 2010.

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE